J. L. FITHIAN ET AL., Respondents, *v.* NORTH-WESTERN LIFE INSURANCE COMPANY, Appellant.

### October 23, 1877.

1. Where a life insurance policy, to be paid up in ten years, contained stipulations for the cash payment, by the insured, of certain quarterly premiums, and for the execution by him, to the insurer, of annual premium notes, the interest on which was to be paid annually; and provided that should default be made in the payment of any premiums, the insurer would pay as many tenth parts of the sum insured as there had been complete annual premiums paid; *held,* that the payment of the notes was not necessary to constitute, with the interest thereon, and the quarterly cash premiums, the complete annual premiums; and the holder of the policy was entitled, on the death of the insured, to a paid-up policy for as many tenths of the sum insured as there were annual premiums paid, without including in such payments the annual premium notes.

2. Where the premium note stipulates that a failure to pay interest thereon should forfeit the policy, but the policy provided that after a complete annual premium had been paid it should be non-forfeiting, courts will not permit the manifest intent of the parties, as declared in the policy, to be defeated by this inconsistent expression in a collateral instrument.

APPEAL from St. Louis Circuit Court.
*Affirmed.*

NOBLE & ORRICK and W. J. SHARMAN, for appellant, cited: *Russum* v. *St. Louis Mutual Life Ins. Co.*, 1 Mo. App. 228; *Anderson* v. *St. Louis Mutual Life Ins. Co.*, 3 Cent. L. J. 354; *Thompson* v. *Knickerbocker Life Ins. Co.*, 3 Cent. L. J. 561; *Robert* v. *New England Mutual Life Ins. Co.*, 1 Big. Life Ins. Cas. 634; *Roehner* v. *Knickerbocker Life Ins. Co.*, 4 Daly, 512; *Patch* v. *Phœnix Mutual Life Ins. Co.*, 44 Vt. 481; *Pitt* v. *Berkshire Life Ins. Co.*, 100 Mass. 500.

W. L. SCOTT, for respondents, cited: *Symonds* v. *North-western Life Ins. Co.*, 3 Cent. L. J. 501; *Bonner* v. *North-western Life Ins. Co.*, 40 Iowa, 357; *Ohde* v. *North-western Life Ins. Co.*, Minn. Sup. Ct.; *Little* v. *North-western Life Ins. Co.*, 5 Ins. L. J. 149; *Hull* v. *North-western Life Ins. Co.*, 39 Wis. 408; *Dutcher* v. *Brooklyn Life Ins. Co.*, 3 Dill. 87; *Russum* v. *St. Louis Mutual Life Ins. Co.*, 1 Mo. App. 228.

LEWIS, P. J., delivered the opinion of the court.

This suit is upon a ten-year policy of insurance for $10,000, issued by defendant, upon the life of William N. Eakin, who died in 1873. The policy bore date July 28, 1866. Its consideration was expressed to be a cash payment of $77.70, and "the annual premium note of $235.70, and the quarterly cash premium of $77.70, to be paid at or before the 28th days of July, October, January, and April in every year, during the first ten years of the continuance of this policy." Among its stipulations were the following:

"And the said company further promise and agree that if default shall be made in the payment of any premium, they will pay, as above agreed, as many tenth parts of the original sum insured as there shall have been complete annual premiums paid at the time of such default." * * * "If the said premiums, or the interest upon any note given for premiums, shall not be paid on or before the days above mentioned for the payment thereof, at the office of the com-

pany, or to agents, when they produce receipts signed by the president or secretary, then, in every such case, the company shall not be liable for the payment of the whole sum assured, and for such part only as is expressly stipulated above."

The premium note referred to was in these words:

"$235$\frac{79}{100}$.          MILWAUKEE, WIS., July 28, 1866.

"For value received I promise to pay to the Northwestern Mutual Life Insurance Company two hundred and thirty-five $\frac{79}{100}$ dollars, with interest at the rate of seven per cent per annum, which interest shall be paid annually, or the policy be forfeited. This note, being given for part of the premium on policy No. 17,549, is to remain a lien upon said policy until it becomes due by limitation, or by the death of Wm. N. Eakin, of Memphis, when the note shall be deducted from the said policy, unless sooner paid.

"WM. N. EAKIN.

"The dividends on this policy are to be applied to the payment of the notes.

"Note No. 1."

By an agreed statement it appears that the quarterly premiums and the interest on the note were regularly paid for the first year. The first two quarterly premiums for the second year were paid, and no more. The interest due at the expiration of the second year was never paid. Upon these facts the Circuit Court rendered judgment in favor of the plaintiffs for $715.32.

The defendant claims that nothing could be recovered upon the policy for two reasons; the first being that no complete annual premium was ever paid, and therefore not even one-tenth part of the original sum insured was ever earned, according to the terms of the instrument. It is assumed that by " complete annual premium " is meant the sum, in money, of the quarterly payments and the premium note added together; and that, as the note was never paid, a part of the first annual premium is still in arrear. We

cannot reconcile this assumption with the language of the policy. It is nowhere stipulated that the whole annual premium is to be discharged in cash. If it was provided that a gross sum was to be paid annually, part of which might be secured by a note payable at a certain time, there would be some propriety in assuming that the entire obligation would not be discharged until the payment of the note. But here the note itself, and not the sum which it is to secure, is expressed to be the consideration, so far, for the insurer's undertaking. No date is fixed for the maturity of the note. The whole tenor of the policy shows that it was not intended to be paid by the maker at all. Its liquidation was to arise, if ever, from dividends, to be applied by the company, or from a deduction to be made in the payment of the insurance money, upon the death of the assured. These annual premium notes, although not collectible annually, were of value to the company, as representing an investment from which it would realize seven per cent per annum, and as further representing an ever-increasing diminution of its ultimate liability on the policy. Thus the note itself, by the manifest intent of the agreement, constituted a distinct element in the composition of the annual premium. This being duly delivered, and the remaining elements being supplied in the quarterly cash payments, a "complete annual premium" was paid, within the meaning of the policy. In *Kelly* v. *Insurance Company*, 3 Mo. App. 554, there was a stipulation that the policy "should not be binding till the first premium had been received by the company, or some authorized agent, during the lifetime and good health of the assured." A note given for the first premium, and accepted by the company, had not been paid when the assured lost his life. It was held that the policy was binding, the first premium having been paid within the meaning of the contract.

The defendant in the present case has, in other states,

offered the same defence against suits upon its policies, but always unsuccessfully. In the following cases the terms of the policies and premium notes were identical with those before us, and in each it was held that the payment of the note was not necessary to constitute, with the quarterly cash premiums and interest, the complete annual premium: *Ohde* v. *North-western Life Ins. Co.*, 40 Iowa, 357 ; *Hull* v. *Same*, 39 Wis. 408 ; *Bonner* v. *Same*, 3 Cent. L. J. 801 ; *Symonds* v. *Same*, Minn. Sup. Ct. (not yet reported) ; *Little* v. *Same*, 5 Ins. L. J. 149. In *Dutcher* v. *Brooklyn Life Insurance Company*, 3 Dill. 87, the terms of the policy were essentially the same. It was held that the holder was entitled to a paid-up policy for as many tenths of the sum insured as there were annual premiums paid, without payment of the annual premium notes included in them.

Defendant claims, secondly, that, by the terms of the premium note, the policy was absolutely forfeited for non-payment of the interest due at the expiration of the second year. The language used is : " Which interest shall be paid annually, or the policy be forfeited." If these words are to be taken literally, without any reference to expressions found elsewhere in the contract, the defence may be sufficient. But if they are repugnant to other provisions, which exclude the possibility of forfeiture for such a cause, the whole contract must be construed most strongly against the insurer, who has chosen, in his own interest, all the forms of expression. At the same time, if there is a reasonable interpretation whereby all the provisions may be harmonized, that must be adopted.

The stipulation, in the note, for a total forfeiture of the policy in the event of a failure to pay interest, taken literally, as the defence demands, is manifestly inconsistent with the provision in the policy whereby, in the same event, the company is still to be liable for as many tenths as there have been annual premiums paid, " as is expressly stipu-

lated above." This provision declares, in effect, that there shall be no forfeiture of the policy for non-payment of interest. Another stipulation in the policy declares that "in every case where this policy shall cease and determine or become null and void, for other reasons than non-payment of premium, all payments thereon shall be forfeited to this company."

Here, again, it is implied that no forfeiture is to arise because of any default in payments, but the contract will be considered as still subsisting, under the modifications created.

Thus the whole theory and plan of the insurance, as developed in the policy, persistently negatives the possibility of a total release of the company's liability because of a failure by the assured to continue his payments after having paid one or more complete annual premiums. No just rule of interpretation will permit an intent so thoroughly pervading the principal voucher of the understanding between the parties to be utterly defeated by an inconsistent expression in a collateral instrument designed, not to destroy or modify, but to effectuate the compact. The rule which would interpret the policy, in a doubtful case, most strongly against the insurer, is conclusive in its application here.

In *Little* v. *North-western Life Insurance Company,* above cited, the court gave an interpretation to the forfeiture clause in the premium note, by which it was made to harmonize with the provisions of the policy. It was considered that the expression " or the policy be forfeited " meant only a forfeiture as to any continuing or future risk, and was not intended to apply to "the rights of the parties as they had already accrued on account of the payments made." This, as a construction of the entire contract, is far more reasonable than that insisted on by the defendant.

Defendant's counsel refer us to a number of cases in which it was held that the non-payment of interest on the

premium note worked a forfeiture of the policy. They bear no analogy with the present case. In every one of them there was an express stipulation to that effect in the policy, and in none was there, as in this case, provision made for a different result. Finding no error in the record, we must affirm the judgment. All the judges concur.